**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| OSCAR VELA, | : | CIVIL NO. 3:14-CV-2138 |
| | : | |
| Petitioner, | : | (Judge Caputo) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DONNA ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The petitioner, a federal prisoner, invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Having conducted this review, we find no error in that calculation, which properly allocates time previously served by Vela between his various state and federal sentences. Therefore, we recommend that this petition for writ of habeas corpus be denied.

In this case the interplay of state and federal sentences which forms the basis for this sentence credit calculation began on December 24, 2007, when Vela was stopped by a Texas State Trooper, in Brooks County, Texas, for speeding. (Declaration of Robert C. Jennings (Ex. 1) ¶ 3). At this time Vela had an outstanding

parole violation warrant and; therefore, he was arrested.  (Id.)  During a search of Vela's vehicle, the State Trooper found eight live rounds of 5.7 mm caliber ammunition in the floor in the back of the vehicle.  (Id.)  Vela was turned over to Travis County officials on the parole violation warrant and his parole was revoked on February 14, 2008.  (Id. ¶ 4).  Vela was released via parole on April 17, 2008.  (Id. ¶ 5).

Eight days later, on April 25, 2008, Vela was stopped by the Rio Grande City, Texas, Police Department for a traffic violation and he was found to have a warrant for "Failure to Appear."  (Id. ¶ 6).  Vela was arrested, transported to jail, and posted bond the same day.  (Id.)  Three weeks later, on September 15, 2008, Vela was stopped for a traffic violation by the Starr County Sheriff's Department.  (Id. ¶ 7).  Vela was found to have a parole violation warrant and was arrested.  (Id.)  On November 18, 2008, the case was dismissed and Vela was remanded to his state parole detainer.  (Id. ¶ 8).  Vela was then released by the Texas Department of Criminal Justice (TDCJ) on December 11, 2008.  (Id.)

Two months passed before Vela was once again arrested.  On February 26, 2009, Vela was arrested by the Sullivan City, Texas, Police Department for "Possession of Marijuana" and "Evading Arrest with a Vehicle."  (Id. ¶ 9).  Vela was indicted and was released on bond.  (Id. ¶ 10).  On September 23, 2009, Vela failed

2

to appear for a court hearing.  (Id. ¶ 11).  The cases remain pending with no hearing dates set.  (Id.)

Amidst this array of state charges, Vela found himself prosecuted in federal court.  On February 10, 2010, a one-count indictment was filed in the United States District Court for the Southern District of Texas.  (Id. ¶ 12; Attach. 1 (Indictment)). The indictment alleged that on or about December 24, 2007, Vela, "after having been previously convicted of a crime punishable by imprisonment for a term exceeding one (1) year, did knowingly possess in and affecting foreign and interstate commerce," firearms ammunition.

On February 28, 2011, Vela was arrested in Fort Worth, Texas, for the offenses of "Evading Arrest with a Vehicle" and "Possession of Marijuana."  (Id. ¶ 13). Officers subsequently located a felony quantity of marijuana in Vela's vehicle.  (Id.) The cases are pending indictment in the 432nd District Court in Fort Worth, Texas. (Id.)  With Vela once again in state custody, he was transferred on March 10, 2011, via a Federal Writ of Habeas Corpus *Ad Prosequendum* to face his pending federal charges.  On November 11, 2011, Vela was sentenced in the United States District Court for the Southern District of Texas to a 35 month term of imprisonment.  (Id. ¶ 15; Attach. 4 (Judgment in a Criminal Case)).  The federal judgment was silent as to the relation with state charges. (Id.)

3

On December 12, 2011, Vela was returned to state primary custody under the terms of the writ. (Id. ¶ 16; Attach. 3). On January 4, 2012, Vela was sentenced in the 432nd District Court, Tarrant County, Texas, to a term of three years imprisonment in TDCJ. (Id. ¶ 17; Attach. 5 (Judgment of Conviction)). The order further stated "[t]his sentence shall run concurrently with Federal and Hidalgo charges if deemed appropriate." (Id.) On July 19, 2012, Vela paroled from TDCJ to the Hidalgo County, Texas, jail on pending charges (Case # CR-3658-09-G). (Id. ¶ 18). On August 6, 2012, Vela was sentenced in the 370th Judicial District Court of Hidalgo County, Texas to serve a term of three years imprisonment. (Id. ¶ 19; Attach. 6 (Judgment and Conviction). Vela was turned over to TDCJ. (Id.) The order further stated "[t]he Court finds that this sentence shall run concurrently with: FEDERAL CASE NO. 210CR00088001." (Id.) On October 18, 2013, Vela paroled from TDCJ into the custody of the United States Marshals to serve his federal sentence. (Id. ¶ 20; Attach. 7 (Pardon and Parole Division Letter).

Thus, Vela was in the primary custody of Texas State officials when the United States Marshals borrowed him via a federal writ *ad prosequendum* on March 10, 2011. (Id. ¶ 22). After Vela was sentenced in federal court on November 21, 2011, he was returned to the primary custody of Texas State officials in accordance with the terms

of the federal writ.  (Id. ¶ 23).  Vela then returned to primary federal custody in

October 2013.

On February 11, 2014, Vela requested a "*Nunc Pro Tunc*" designation to have

his federal sentence run concurrent with his state sentences.  (Id. ¶ 24).  In accordance

with Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), the BOP considers an inmate's

request for prior custody credit for time spent in state custody as a request for a "*Nunc

Pro Tunc*" designation of the state institution for service of the federal sentence.  (Id.

¶ 25; Attach. 9 (Program Statement 5160.05)).  A designation effecting concurrent

service of state and federal sentences is made only when it is consistent with the intent

of the sentencing federal court or the goals of the criminal justice system.  (Id. ¶ 27;

Attach. 9).  It is the preference of the BOP that the federal sentencing court is given

an opportunity to state its position with respect to a retroactive designation, which,

while not binding, can be helpful in our determination to grant or deny the request.

(Id.)  Ordinarily, the BOP allows the sentencing court up to 60 days to provide input

into this matter.  (Id. ¶ 28; Attach. 9).  If, after 60 days, a response has not been

received from the sentencing court, then the BOP will complete its review relevant to

factors under Title 18 U.S.C. § 3621(b) and make a final determination in this case.

(Id.)

In Vela's case on March 3, 2014, a letter was sent inquiring as to the sentencing court's position on a retroactive designation for Vela. (Id. ¶ 29; Attach. 10 (Letter to Sentencing Court)). The court never responded to this request for guidance. Accordingly, Vela's case was reviewed pursuant to the five factors provided in 18 U.S.C. § 3621(b). (Id. ¶ 30; Attach. 11 (Factors Under 18 U.S.C. § 3621(b) The relevant factors in Vela's case were factors (2), (3) and (4). As to these factors, prison officials noted that: the instant federal offense is felon in Possession of Ammunition; and the record reflects the following state convictions for Vela: Engaging in Organized Criminal Activity, Possession of Marijuana, Public Intoxication, and Possession of Cocaine. Furthermore, prison officials took into account the statutory guidance that pursuant to 18 U.S.C. § 3584, "multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently". This presumption had not been rebutted by the federal sentencing court which had never responded to the request for comment regarding its position on a retroactive designation. (Id. ¶ 31).

On May 12, 2014, Vela's request for a "*nunc pro tunc*" designation was denied. (Id. ¶ 32; Attach. 11). In reaching this conclusion the BOP relied upon 18 U.S.C. § 3585(b) to determine prior custody credit on a federal sentence. (Id. ¶ 33). Section 3585(b) precludes the application of credit for time that has already been credited

toward another sentence.  (Id.)  Prison officials also considered Program Statement

5160.05, Designation of State Institution for Service of Federal Sentence, and 18

U.S.C. § 3568,which state in part, that "[j]ust as the federal government has no

authority to prescribe when a state sentence will commence, the state has no authority

to order commencement of a federal sentence."  (Id. ¶ 34; Attach. 9).  Finally, since

Vela's federal judgment was silent regarding its relationship to the impending state

sentences, the BOP considered this sentence to be a consecutive term of imprisonment.

(Id. ¶ 35).  Therefore, Vela's federal sentence was deemed to commence on October

18, 2013, the date Vela paroled from the Texas State sentences.  (Id. ¶ 36).  Further,

prior custody credit was applied to Vela's federal sentence for April 25, 2008, and

from September 15, 2008, through December 11, 2008, as this time was not awarded

toward any other sentence.  (Id. ¶ 37; Attach. 8).  Based upon these findings, the BOP

has determined that a "Nunc Pro Tunc" designation is not consistent with the goals of

the criminal justice system due to the nature of Vela's current federal conviction, state

convictions, repetitive criminal conduct, and the intent of the sentencing court.  (Id.

¶ 38).

        Dissatisfied with this sentence calculation, Vela filed this petition for writ of

habeas corpus challenging the Bureau of Prisons' sentence calculation. (Doc. 1.) This

petition is fully briefed by the parties, and is, therefore, ripe for resolution.  For the

reasons set forth below it is recommended that this petition for writ of habeas corpus be denied since the Bureau of Prisons has accurately calculated the sentence credit that Vela is entitled to receive on the facts of this case in accordance with the law which governs such credits.

## II.    Discussion

This petition invites this Court to review a sentence credit calculation conducted by the Bureau of Prisons for an inmate who is a criminal recidivist serving both state and federal sentences. There are two component parts to the legal analysis we are called upon to perform in a case such as this, where we examine a Bureau of Prisons sentence credit determination. It is well settled that: "The computation of a federal sentence requires consideration of two separate issues. Initially, we determine the commencement date of the federal sentence and then turn to the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence." Binford v. United States, 436 F.3d 1252, 1254-55 (10th Cir. 2006). As this Court has aptly observed:  "'Computing a federal sentence requires two separate determinations:  first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.' United States v. Smith, 812 F.Supp. 368, 370 (E.D.N.Y.1993)." Chambers v. Holland, 920 F. Supp. 618, 621 (M.D.Pa. 1996).

Each of these legal determinations, in turn, is made against the backdrop of a specific statutory and regulatory system for calculating credit for time served by federal prisoners. A key component of this system involves the delegation of authority for initial sentence computations. By law:

> The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, <u>United States v. Wilson</u>, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and has delegated that authority to the Director of the Bureau of Prisons. 28 C.F.R. § 0.96 (1992). . . . [Thus], [t]he decision to grant or deny credit for time served prior to the date of sentencing vests initially in the BOP, not the sentencing judge.

<u>Chambers v. Holland</u>, <u>supra</u>, 920 F. Supp. at 621.

However, as the Supreme Court has recognized, <u>United States v. Wilson</u>, 503 U.S. 329 (1992), in calculating credit for time served, the Bureau of Prisons is guided by statute; namely, 18 U.S.C. § 3585, which provides that:

> (a) Commencement of sentence.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585.

This statute, and case law construing the statute, then guide us in addressing the two questions which lie at the heart of Vela's habeas petition:  first, when did Vela's federal sentence commence; and, second, to what extent may Vela receive credit for any time already spent in custody?

With respect to the first of these questions regarding when Vela's sentence commenced, it is clear that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ." 18 U.S.C. § 3585(a).  Therefore, as a general rule, "[a] federal sentence commences when the defendant is received by the Attorney General for service of his . . . sentence.  See 18 U.S.C. § 3585(a).  See also United States v. Pungitore, 910 F.2d 1084, 1118-19 (3d Cir.1990).  As a result, a federal sentence [typically] cannot begin to run earlier than on the date on which it is imposed.  See United States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir.1998)." Taylor v. Holt, 309 F.Appx. 591, 592-93 (3d Cir.  2009).  Applying this straightforward guidance, in this case the Bureau of Prisons correctly concluded that Vela's sentence commenced when Vela was received in custody for service of that sentence.

Section 3585, and case law construing this statute, also define for us the answer to the second question we must examine: to what extent may Vela receive credit for any time already spent in custody against his federal sentence.  In this regard, we begin

with the proposition that Vela may not receive: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit.  United States v. Wilson, 503 U.S. 329, 337 (1992)." Taylor v. Holt, supra 309 F.Appx. at 593.

It is also clear beyond any dispute that a defendant, like Vela,  who is serving a state sentence but is taken temporarily from state custody to federal court pursuant to a writ of habeas corpus *ad prosequendum* does not come into federal "custody" for purposes of calculating prison sentence credit under § 3585.  Indeed, courts have repeatedly examined this question, and consistently held that temporarily holding a prisoner on a writ does not equate to custody for purposes of calculating sentence credit.  See, e.g., Rashid v. Quintana, No. 09-4079, 2010 WL 1141386 (3d Cir. March 25, 2010); Taylor v. Holt, supra; United States v. Hayes, 535 F.3d 907 (8th Cir. 2008); D'Amario v. Zenk, 131 F. App'x 381 (3d Cir. 2005); Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992); Chambers v. Holland, supra; Miller v. United States, 826 F. Supp. 636 (N.D.N.Y. 1993); United States v. Smith, 812 F. Supp. 368 (E.D.N.Y. 1993); United States v. Killion, 788 F. Supp. 1165 (D. Kan. 1992).  Accordingly, these cases uniformly reject efforts by federal prisoners to secure jail-time credit for periods in which they were held temporarily in federal court on a federal writ while serving their

state sentences.  Id.  The rationale for this rule, which enjoys broad acceptance by the

courts, can be simply stated:

> A federal sentence does not begin to run, . . ., when a defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum.  Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation.  Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir.1992); Hernandez v. United States Attorney General, 689 F.2d 915, 918-19 (10th Cir.1982); Roche v. Sizer, 675 F.2d 507, 509-10 (2d Cir.1982); see also Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir.1991) (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody); Salley, 786 F.2d at 547-48 (defendant produced and sentenced in federal court via writ of habeas corpus ad prosequendum did not begin to serve consecutive federal sentence until delivered into federal custody).  This rule derives from the fact that the federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities.  Whalen, 962 F.2d at 361 n. 3; In re Liberatore, 574 F.2d 78, 79 (2d Cir.1978); Crawford v. Jackson, 589 F.2d 693, 695 (D.C.Cir.1978).

United States v. Smith, 812 F. Supp. 368, 370-71 (E.D.N.Y. 1993).

Finally, we note that 18 U.S.C. § 3584, speaks to the issue of whether Vela can

compel a finding that his state and federal sentences must run concurrently and

provides that "multiple terms of imprisonment imposed at different times run

consecutively unless the court orders that the terms are to run concurrently."  Here

there is absolutely no indication that the federal sentencing judge intended such a

concurrent sentence, and that judge declined an invitation to recommend such a favorable sentence for this repeat offender.

These basic legal tenets control here, and compel denial of Vela's petition for writ of habeas corpus.  In this case it is undisputed that Vela commenced his sentence when he was surrendered to begin service of that sentence.  Prison officials also calculated Vela's sentence credit in a manner which paid fidelity to the principle that Vela may not receive such: "credit for time spent in state custody prior to sentencing in a federal case because 18 U.S.C. § 3585(b) prohibits this double credit.  United States v. Wilson, 503 U.S. 329, 337 (1992)."  Taylor v. Holt, supra 309 F. App'x at 593.  Moreover, in reaching this calculation of Vela's jail time credit, the Bureau of Prisons closely followed both the spirit and the letter of the law.  Consistent with case law, it declined to credit Vela for time that was already credited against his separate state sentence.  Thus, this federal jail time credit calculation provided Vela with proper credit for his prior custody while avoiding one of the evils condemned by the Supreme Court in United States v. Wilson, 503 U.S. 329, 337 (1992), since it "made clear that [the] defendant could not receive a double credit for his detention time."  Id.

Accordingly, since the Bureau of Prisons' sentence credit calculation fully comports with the law, and provides Vela all the credit he is entitled to receive, this petition for writ of habeas corpus should be denied.

13

Moreover, we note that Vela has now completed service of this federal sentence. Therefore, this case is now moot and should be dismissed.   The mootness doctrine recognizes a fundamental truth in litigation:   "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996).

There is a constitutional dimension to the mootness doctrine.

Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies."  Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).  "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Id. (citing Allen v. Wright, 468 U.S. 737, 750-751 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471-473 (1982)). Article III denies the District Court the power to decide questions that cannot affect the rights of litigants before it, and confines it to resolving live controversies "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241 (1937).  The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. Lewis, 494 U.S. at 477-478.  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' "  Spencer, 523 U.S. at 7 (quoting Lewis, 494 U.S. at 477).   Incarceration satisfies the case or controversy

14

requirement; it is a concrete injury caused by a conviction and is likely to be redressed by invalidation of the conviction.  Id.  Once a sentence has expired, however, some continuing injury, also referred to as a collateral consequence, must exist for the action to continue.  Id.

Burkey v. Marberry, 556 F.3d 142, 147 (3d. Cir. 2009)(dismissing habeas petition as moot).

In the context of habeas corpus petitions mootness questions, therefore, often turn on straightforward factual issues.  Thus:

> [A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition.  Lane v. Williams, 455 U.S. 624, 631(1982).  This general principle derives from the case or controversy requirement of Article III of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate ... the parties must continue to have a personal stake in the outcome of the lawsuit."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted).  In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Id. at 477(citations omitted).

DeFoy v. McCullough, 393 F.3d 439, 441-442 (3d Cir. 2005).

Applying this principle, courts have typically dismissed habeas petitions as moot where it is shown that the prisoner-petitioner has been released from the sentence which he is challenging, reasoning that when that sentence has been fully discharged a habeas petition attacking the sentence is no longer subject to redress in

the courts.  See, e.g., Marine v. Quintana, 347 F. App'x 736 (3d Cir. 2009); Scott v.

Schuylkill, FCI, 298 F. App'x 202 (3d Cir. 2008); Scott v. Holt, 297 F. App'x 154 (3d

Cir. 2008); Williams v. Sherman, 214 F. App'x 264 (3d Cir. 2007); Razzoli v. FCI

Allenwood, 200 F. App'x 166 (3d Cir. 2006).  This principle also applies here and

calls for denial of this petition.

## III.  **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for

Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and

that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof.  Such party shall file with the
> clerk of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections.  The briefing requirements set forth in Local
> Rule 72.2 shall apply.  A judge shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made and may  accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> magistrate judge.  The judge, however, need conduct a new hearing only
> in his or her discretion or where required by law, and may consider the
> record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22d day of February 2016.

*S/Martin C. Carlson*

Martin C. Carlson
United States Magistrate Judge